UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D'ANDRE MARQUIS ALEXANDER,

        Plaintiff,                        Case No. 2:16-cv-12072

v.                                HONORABLE STEPHEN J. MURPHY, III

RUSSELL VITTITOW, et al.,

        Defendants.

_____/

**OPINION AND ORDER SUMMARILY DISMISSING COMPLAINT
<u>AND FINDING AS MOOT PLAINTIFF'S MOTION FOR SERVICE</u>** (document no. 7)

Before the Court is Plaintiff D'Andre Marquis Alexander's pro se civil rights complaint for money damages, a declaratory judgment, and injunctive relief under 42 U.S.C. § 1983. Alexander is a state prisoner at the Macomb Correctional Facility in New Haven, Michigan. The events in question occurred at the Saginaw Correctional Facility (SRF) in Freeland, Michigan and the Chippewa Correctional Facility (URF) in Kincheloe, Michigan. There are four defendants: Russell Vittitow, the grievance coordinator at SRF; Robert Norton, a resident unit manager at URF; Lloyd Rapelje, the warden at SRF; and Tom Finco, deputy director of the Michigan Department of Corrections.

Alexander alleges that on June 6, 2013, a correctional officer named Neitzel sexually assaulted him during a pat down at SRF. Alexander filed a grievance over the assault, but the matter was investigated, and correctional officials determined from witnesses, health care information, and a video of the shakedown that Alexander's allegation was unfounded. As a result, then, of the unfounded allegation, defendant Vittitow asked to have Alexander placed on modified-access status: Alexander could receive a grievance form only if Vittitow determined that the issue was grievable and that Alexander had tried to resolve the issue

before seeking to file a grievance. After defendant Rapelje[1] granted Vittitow's request, Vittitow placed Alexander on modified-access status for ninety days. *See* Compl., Exs. B and C.

A prison policy directive states that an inmate may have his access to the grievance process limited if the inmate is found guilty of misconduct for filing an unfounded grievance. *See id.*, Ex. A. Because Alexander was not charged with writing a false grievance before he was placed on modified-access status, he filed a grievance against Vittitow and Rapelje. The grievance appears to have been submitted to prison officials in July of 2013. *See id.*, Ex. D.

On September 4, 2013, Vittitow charged Alexander with misconduct for interfering with the administration of rules by writing the false grievance about being sexually assaulted by Officer Neitzel. *See id.*, Ex. I. Defendant Finco approved the filing of a misconduct ticket, and defendant Norton conducted a hearing on the charge. On September 6, 2013, Norton found Alexander guilty as charged and imposed a sanction of thirty days loss of privileges. *See id.*, Ex. J.

Rapelje subsequently resolved Alexander's grievance at Step II of the grievance process. He opined that Alexander was correct in stating that he should have received a misconduct ticket before being placed on modified-access status, but he noted that the misconduct ticket was written as soon as it was administratively feasible. *See id.*, Ex. E. Rapelje's decision was upheld at the third and final step of the grievance process. *See id.*, Ex. G.

---

[1] Although Plaintiff spelled this defendant's surname "Rapelji" in the body of his complaint, an exhibit to the complaint indicates that the correct spelling is "Rapelje."

Alexander claims Vittitow violated his Fourteenth Amendment right to due process when he failed to cite him for misconduct before placing him on modified-access status. Alexander also claims that his right to due process was violated because he was not given enough time to gather documents, to present witnesses, or to compel disclosure of evidence before the hearing on the misconduct ticket.

Alexander further alleges that Vittitow violated his rights under the First Amendment by charging him with misconduct for allegedly interfering with the administration of rules. Alexander asserts that the misconduct ticket was issued in retaliation for Alexander's protected conduct of writing a grievance against Vittitow and Rapelje for placing him on modified-access status.

Finally, Alexander claims that some of the defendants conspired against him while other defendants failed to report or intervene with the conspiracy. Alexander alleges that the defendants' actions and inactions amounted to cruel and unusual conduct under the Eighth Amendment.

## LEGAL STANDARD

Pursuant to the Prison Litigation Reform Act of 1996, federal district courts must screen a prisoner's complaint and dismiss the complaint if it is frivolous, malicious, fails to state a claim for which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Flanory v. Bonn*, 604 F.3d 249, 252 (6th Cir. 2010); *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001). A complaint is frivolous if it lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Although a complaint "does not need detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnote and citations omitted). In other words, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## DISCUSSION

I.   <u>Due Process</u>

Alexander claims his right to due process was violated in two ways: first, by his placement on modified-access status without first being charged with misconduct, and second, by not receiving enough time to gather documents, to present witnesses, or to compel disclosure of evidence prior to the hearing on the misconduct ticket.

The first claim rests on Defendants' alleged failure to follow Michigan Department of Corrections' protocols as laid out in its policy directives. But even if Defendants did fail to adhere to the protocols, the infraction alone would not violate Alexander's due-process rights. As the Sixth Circuit has noted:

> Section 1983 . . . authorizes courts to redress violations of rights, privileges, or immunities secured by the Constitution and federal laws that occur under color of state law. The statute is thus limited to deprivations of federal statutory and constitutional rights. It does not cover official conduct that allegedly violates state law.

4

*Michael v. Ghee*, 498 F.3d 372, 375 (6th Cir. 2007) (quotation marks and citations omitted). Although Alexander asserts a due process claim, a prisoner's claim for money damages in a prison misconduct action generally is not cognizable under § 1983 when, as here, a judgment in the prisoner's favor would necessarily imply the invalidity of the punishment imposed. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997).

Furthermore, state action taken for a punitive reason does not necessarily encroach on a liberty interest under the Due Process Clause. *Sandin v. Conner*, 515 U.S. 472, 484, (1995). Liberty interests protected by the Due Process Clause generally are "limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* (internal citations omitted).

Alexander was punished with thirty days loss of privileges for interfering with the administration of rules. The loss of privileges for thirty days did not deprive Alexander of a protected liberty interest because it was not an atypical or significant hardship. *See, e.g.*, *id.* at 486 (holding that placement in segregated confinement for thirty days did not work a major disruption in the prisoner's environment); *see also Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (noting that having to pay $3.00 for a damaged extension cord and losing privileges for fourteen days did not deprive a prisoner of a protected liberty interest because the sanctions did not extend the duration of the prisoner's sentence, or impose an atypical and significant deprivation). And because Alexander was not deprived of a protected liberty interest, there was no cognizable harm to him when he lost privileges for thirty days. *See Orr v. Hawk*, 156 F.3d 651, 654 (6th Cir. 1998) (stating that, "[w]here an

5

interest is not a protected one, there is no cognizable harm to the individual when deprived of that interest") (citing *Ky. Dep't. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Absent a deprivation of a protected liberty interest, the allegedly inadequate time to prepare for the hearing is not cognizable. The Court therefore finds no merit in Alexander's due process claim.

II.    Retaliation

Alexander alleges that the defendants charged him with misconduct in retaliation for filing a grievance against Vittitow and Rapelje. A prisoner raising a First Amendment retaliation claim in a section 1983 action must show three things:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

"[A] prisoner has a First Amendment right to file grievances against prison officials." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). Consequently, Alexander was engaged in protected conduct when he filed a grievance against Vittitow and Rapelje for placing him on modified-access status. The first element of a retaliation claim is satisfied.

The second element also is satisfied. Vittitow charged Alexander with prison misconduct after Alexander engaged in protected conduct. A prison official's misconduct report against an inmate after the inmate filed a grievance against a correctional official would deter an inmate of ordinary firmness from filing additional grievances, because a finding of guilt on a misconduct charge can result in sanctions against the inmate. *See Thomas v. Eby*,  481 F.3d 434, 441 (6th Cir. 2007) (stating that, "[b]ecause inmates

convicted of major-misconduct charges lose their ability to accumulate disciplinary credits for that month, inmates of ordinary firmness would be more reluctant to engage in protected conduct that may lead to the retaliatory issuance of misconduct tickets.").

The third element, however, is not met. A retaliation claim requires a causal connection between the plaintiff's protected conduct and the defendant's adverse action. "[T]he plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d at 1037 (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Alexander has not done so here.

Vittitow's motivation for charging Alexander with misconduct is apparent from exhibits to the complaint. He concluded, based on evidence from witnesses, health care information, and a video, that Alexander falsified a grievance against correctional officer Neitzel so that Neitzel would be disciplined. Although Vittitow waited three months to charge Alexander with misconduct and then did so after Alexander filed a grievance against him, defendant Norton ultimately found Alexander guilty of the alleged misconduct, based on the evidence. "A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.' " *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005) (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)). Therefore, Alexander has failed to establish a causal connection between his grievance against Vittitow and Vittitow's subsequent misconduct report against Alexander. Accordingly, Alexander's retaliation claim fails because he has not satisfied all three elements of a retaliation claim.

III.   Conspiracy and Failure to Intervene

Alexander has sued the defendants under 42 U.S.C. §§ 1985 and 1986 for conspiring against him and for failing to prevent or intervene to prevent the conspiracy. 42 U.S.C. § 1985(3) — the only relevant subsection of the statute[2] — forbids two or more persons from conspiring to deprive another person of the equal protection or the laws. To establish a claim under § 1985(3), "a plaintiff must prove (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994). The plaintiff also must demonstrate that "the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus." *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971)). In other words, "[t]o sustain a claim under section 1985(3), a claimant must prove both membership in a protected class and discrimination on account of it." *Estate of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 765 (6th Cir. 2010).

"Prisoners are not a 'protected class' for equal protection purposes," *Okoro v. Scibana*, 63 F. App'x 182, 185 (6th Cir. 2003) (citing *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997)), and Alexander has not demonstrated that the defendants were

---

[2] Section 1985(1) prohibits conspiracies to prevent an officer from performing his or her duties, and section 1985(2) prohibits conspiracies to intimidate a party, witness, or juror or to obstruct justice in state courts. Section 1985(3), on the other hand, addresses conspiracies to deprive a person or class of persons of equal protection of the laws.

motivated by another class-based, discriminatory animus. Accordingly, Alexander fails to state a claim under § 1985(3).

Alexander's claim under 42 U.S.C. § 1986 also fails. "Section 1986 imposes liability on those individuals who have knowledge of any of the wrongs prohibited by section 1985, yet fail to prevent them." *Seguin v. Sterling Heights*, 968 F.2d 584, 590 (6th Cir. 1992). But, "[w]ithout a violation of section 1985(3), there can be no violation of section 1986." *Id.* (citing *Grimes v. Smith*, 776 F.2d 1359, 1363 n.4 (7th Cir. 1985)). Because Alexander's § 1985(3) claim lacks merit, his § 1986 claim fails to state a claim for which relief may be granted.

## IV.   Cruel and Unusual Punishment

Alexander alleges that the defendants' acts and omissions violated his right, under the Eighth Amendment, to not be subjected to cruel and unusual punishment. The Constitution does not permit inhumane prisons, "and it is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). The Eighth Amendment imposes duties on prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care," and to "'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

But "a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious;' a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* at 834 (internal and end citations omitted). Second, "[t]o violate the Cruel

and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind.' In prison-conditions cases, that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* (internal and end citations omitted).

Nothing in the facts, as alleged, suggests that Defendants deprived Alexander of the minimal civilized measure of life's necessities. He was merely placed on modified-access status for a few months, and then deprived of certain privileges for thirty days.

The facts also do not indicate that the defendants were deliberately indifferent to Alexander's health, safety, or other needs. Although officials initially restricted Alexander's ability to file grievances, Rapelje noted in his response to Alexander's Step II grievance that all of Alexander's requests for grievances while on modified-access status were given consideration. As for the prison misconduct ticket, Alexander encouraged the filing of the misconduct ticket by complaining that he was placed on modified-access status even though he did not receive a misconduct ticket for filing a false grievance. Under the circumstances present here, he cannot complain that the defendants had a culpable state of mind when they rectified the problem by charging him with misconduct. The Court therefore rejects Alexander's Eighth Amendment claim.

For all the reasons given above, Alexander's complaint lacks an arguable basis in law and is therefore frivolous. The complaint also fails to state a plausible claim for which relief may be granted. The Court will therefore dismiss the Complaint, rendering Plaintiff's pending motion for service moot.

### ORDER

**WHEREFORE,** it is hereby **ORDERED** that the complaint is summarily **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

10

**IT IS FURTHERED ORDERED** that an appeal from this order would be frivolous and could not be taken in good faith.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Service (document no. 7) is **MOOT**.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: December 22, 2016


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 22, 2016, by electronic and/or ordinary mail.

s/David P. Parker
Case Manager